IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ABILENE RETAIL #30, INC.,

        Plaintiff,

        v.                            Case No.  04-2330 JWL

THE BOARD OF COMMISSIONERS
OF DICKINSON COUNTY, KANSAS,
and
KEITH D. HOFFMAN

        Defendants.

_____

## MEMORANDUM AND ORDER

This case involves a claim by Abilene Retail (doing business as The Lion's Den Adult Superstore) against officials of Dickinson County ("the County"), Kansas, for declaratory and injunctive relief against the County's Ordinance No. 121304A ("the Ordinance").  The Ordinance is a zoning provision that regulates The Lion's Den, a sexually oriented business located in Dickinson County.  This matter comes before the court on the County's motion for summary judgment (doc. # 48).  For the reasons explained below, the motion is granted.

### STATEMENT OF MATERIAL FACTS[1]

In 2003, Abilene Retail opened the Lion's Den Adult Superstore in Dickinson County, which has a population of roughly 6,100. The Lion's Den sells hundreds of sexual devices, and at least 90% of its inventory is sexually explicit items, materials, or devices. It is the only sexually oriented business in Dickinson County.

In July 2004, the County passed Ordinance No. 070804, which regulated sexually oriented businesses. Abilene Retail immediately challenged that ordinance. The parties agreed to non-enforcement against Abilene Retail, and that ordinance was soon repealed by the passage of a new ordinance at the end of 2004.[2]

Dickinson County passed the new ordinance, Ordinance No. 121304A, on December 13, 2004. It substantially limited the scope of the previous zoning ordinance. Among its provisions regulating sexually oriented businesses in Dickinson County, it (1) increased the threshold of sexually oriented merchandise to 35%; (2) increased the threshold of ownership interest to 30%; (3) provided for judicial review of any licensing dispute and provisional licensing pending any judicial review; (4) reduced the distance limitations from 1,500 feet to

---

[1] Consistent with the established standard for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to the nonmoving party.

[2] Abilene Retail did challenge Ordinance No. 070804 in its complaint, but the parties now agree this challenge is moot.

1,200 feet; (5) eliminated all restrictions against signage advertising; and (6) prohibited sexually oriented businesses from operating between midnight and 6 A.M.

About one week before the commissioners passed the new ordinance, they received testimony at a public hearing.  They also reviewed reports and studies, case law, and legislative evidence on the secondary effects of sexually oriented businesses.  Reflecting on these efforts, the new ordinance included in its preamble nearly four pages explaining that the Ordinance's purpose is to regulate the secondary effects of sexually oriented businesses. Notably, it discussed 27 court cases affirming the secondary effects of sexually oriented businesses, including guidance in *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683 (10th Cir. 1998).  It also discussed 22 reports verifying these secondary effects, including 7 reports cited affirmatively by the Tenth Circuit in *City of Aurora*.  *See id.* at 687, n.1.  Later, in March 2005, the County passed Ordinance No. 032805.  It designated ten available areas for sexually oriented businesses to locate in Dickinson County.

Abilene Retail disputes that the County actually relied on any of the cases or reports documenting the secondary effects of sexually oriented businesses.  In support, it points to parts of the record where the commissioners could not clarify their understanding or specific reliance upon the cases and reports at issue.  During the course of litigation, it retained an expert witness, Dr. Linz, who substantially questions the methodology underlying many of the reports cited by the County.  In turn, the County retained its own expert, Dr. McCleary, who largely refuted Dr. Linz's allegations.  The County also identified several federal cases that

3

have rejected Dr. Linz's arguments as legally insignificant under the established framework for upholding a zoning ordinance that regulates sexually oriented businesses.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).   In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.   *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002).   A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."   *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."   *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.   *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).   In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,*

4

233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## **ANALYSIS**

The court faces six primary issues: (1) whether Abilene Retail has standing to challenge the Ordinance; (2) whether the Ordinance is content-based or content-neutral and what level of constitutional scrutiny the court should apply; (3) upon deciding that the ordinance is content-neutral, whether the Ordinance advances a substantial government interest while being narrowly tailored and leaving open alternative avenues of communication; (4) whether the Ordinance violates the overbreadth doctrine; (5) whether the inspection provisions of the Ordinance violate the Fourth Amendment; and (6) whether the Ordinance violates the Fourteenth Amendment right to privacy.

After examining each of these issues, the court finds there is no genuine issue of material fact and that as a matter of law the Ordinance is valid as a content-neutral zoning regulation that seeks to prevent the secondary effects of sexually oriented businesses in Dickinson County.

**1.    Standing**

Before reaching the merits, this court must confirm that Abilene Retail has standing. *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 1998)).   A federal district court may only adjudicate an Article III case or controversy.    *Id.*   (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986)).  Article III standing has three independent requirements:

> First, the plaintiff must suffer an injury-in-fact.  An injury in fact is an "invasion of a legally protected interest" that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical.  Second, the injury must

be "fairly trace[able] to the challenged action of the defendant," rather than some third party not before the court.  Third, it must be likely that a favorable court decision will redress the injury of the plaintiff.

*Id.*  (internal citations omitted).

In this case, the County alleges that Abilene Retail lacks standing because of the third factor: redressability.   It asserts that there is no First Amendment protection for sexual devices.   Based on this premise, it contends that First Amendment analysis of the Ordinance is unnecessary because Abilene Retail still would be regulated as a sexual device seller, regardless of any favorable First Amendment holding.  *See Nova Health Systems v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) (recognizing that a plaintiff lacks standing if a favorable decision will not redress the plaintiff's injury).

Abilene Retail responds with three reasons why it has standing, but the court will focus on its third reason.   It claims that it could restructure its inventory by not selling sexual devices and selling only materials and items protected by the First Amendment. In support, it analogizes to *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000).   Admittedly in that case the issue was mootness and not redressability, but the analogy remains convincing.   There the Supreme Court allowed a nude dancing establishment to challenge a nude dancing ordinance even though the establishment had closed its doors and sold its property.   The Court reached the merits after concluding that the establishment remained an incorporated entity under state law and "*could* very easily get back into the nude dancing business." *Id.* at 303.   Likewise, given a favorable decision on the First Amendment issue in this case, Abilene Retail could very easily reopen its store without selling sexual devices.   Although disputed, Abilene Retail's

claim of standing is tenable in light of the Supreme Court's analysis in *City of Erie*. The court will therefore reach the merits of this case.

**2.      Whether the Ordinance is Content-based or Content-neutral**

As a threshold matter, the court must decide whether the Ordinance is content-based or content-neutral. This determines whether the court applies strict scrutiny or intermediate scrutiny to the Ordinance. This issue has been heavily litigated, and the Tenth Circuit has concluded that zoning regulations similar to the Ordinance are content-neutral. Thus, the court will apply intermediate scrutiny in its First Amendment analysis.

In deciding whether the Ordinance is content-based or content-neutral, "the government's purpose in enacting the regulation is the controlling consideration." *City of Aurora*, 136 F.3d at 686. If the Ordinance "serves purposes unrelated to the content of expression" it is considered content-neutral, "even if it has an incidental effect on some speakers or messages but not others." *See id.* (citing *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47-48 (1986)). *City of Aurora* held that a zoning ordinance regulating sexually oriented businesses is generally content-neutral so long as the ordinance is "intended to curb the secondary effects" rather than First Amendment expression. *Id.*

Drawing from the actions taken by the city commission in *City of Aurora*, the preamble of the Ordinance establishes that Dickinson County relied upon 22 secondary effects reports and 27 court cases affirming the secondary effects of sexually oriented businesses, including *City of Aurora* itself. Moreover, allegations of a hidden motive by the County against Abilene

8

Retail are irrelevant. *City of Aurora*, 136 F.3d at 686-87. Accordingly, the court accepts the County's statement in its preamble that the secondary effects of sexually oriented businesses prompted the Ordinance. Intermediate scrutiny is thus the proper standard. *See also City of Littleton*, 311 F.3d at 1238 n.15 (10th Cir. 2002), rev'd on other grounds, *City of Littleton*, 541 U.S. 774 (applying intermediate scrutiny).

In addition, the Ordinance appears to be indistinguishable from the ordinance in *City of Aurora*. In that case, the city's ordinance targeted "off-site" sexually oriented retail stores with "comprehensive licensing, operating, and inspection requirements for sexually oriented businesses located within the city limits. The ordinance further required sexually oriented businesses to locate in industrially-zoned areas, and prohibited them from locating within 1500 feet of churches, schools, residential districts or dwellings, public parks, and other sexually oriented businesses." 136 F.3d at 685. Because Abilene Retail could not distinguish the Ordinance in this case from the ordinance in *City of Aurora* in any meaningful regard, the court relies on the on-point holding in *City of Aurora* throughout this decision.

**3.    Whether the Ordinance Survives Intermediate Scrutiny**

As the Supreme Court announced in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), a "content-neutral time, place, and manner" regulation is acceptable so long as it: (1) serves a substantial governmental interest; (2) is narrowly tailored; and (3) does not unreasonably limit alternative avenues of communication. *Id.* at 47; *City of Aurora*, 136 F. 3d

at 688.   Abilene Retail challenges the Ordinance under each of the three requirements of the *City of Renton* test.  The court will now address each challenge.

### A.        Substantial Government Interest

The Ordinance advances a substantial government interest if the County fulfills its burden of proof to"'demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.'  On the other hand, the [Supreme] Court has repeatedly emphasized that 'municipalities must be given a 'reasonable opportunity to experiment with solutions' to address the secondary effects of protected speech.'"  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1197 (10th Cir. 2003) (internal citations omitted).

Here, in the preamble of the Ordinance, the County includes 22 secondary effects reports and 27 cases discussing the secondary effects of sexually oriented businesses.  Abilene Retail alleges that the County's reliance on these outside materials was merely a pretext, a sham to cloak its true intent to suppress the protected First Amendment rights of Abilene Retail.

But this argument fails as a matter of law.  To begin, "'[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem the city addresses.'  Accordingly, it is common in these cases for cities to cite and rely on seemingly pre-packaged

10

studies, as well as the findings of courts in other cases." *Id*. (quoting *City of Renton*, 475 U.S. at 51-52).    The proper standard for reviewing the evidence and the burdens of the parties is currently as follows:

> This is not to say that the municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton.*    If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Id*. at 1199.

In this case, there is ample evidence that the County "reasonably believed" that the reports and cases discussed in its preamble were "relevant to the problem" addressed by the Ordinance.    *City of Renton*, 475 U.S. at 51-52.    The County did not simply cite previous secondary effects studies and flatly ignore the challenges proposed by Abilene Retail's expert, Dr. Linz.[3]    Instead, the County retained the author of one of the recognized secondary effects studies, Dr. McCleary, who directly reviewed and contradicted the findings of Abilene Retail's expert, Dr. Linz.

---

[3]    This distinction alone negates Abilene Retail's reliance on *Peek-A-Boo Lounge v. Manatee County*, 337 F.3d 1251 (11th Cir. 2003).   In that case, the court qualified its holding: "Significantly, the County has not attempted to counter the Adult Lounges' evidence with local studies of its own. We are not dealing, therefore, with a case involving a battle of competing experts." *Id*. at 1272.

11

Rather than freshly evaluating the evidence of secondary effects, the Tenth Circuit, in line with the Supreme Court's repeated holdings, has "refused to set such a high bar for municipalities that want to address merely the secondary effects of protected speech." *Id.* (citation omitted). Instead, "cities are entitled to rely, in part, on 'appeal to common sense,' rather than 'empirical data,' at least where there is no 'actual and convincing evidence from plaintiffs to the contrary.'" *Id.* This court may not reweigh the legislative findings of local policymakers. *See id.* (observing that "courts should not be in the business of second-guessing fact-bound empirical assessments of city planners.") (citation omitted). Repeatedly, the federal courts have viewed Dr. Linz's methodological attacks as immaterial. In *City of Erie*, for instance, the Court urged that it already had "flatly rejected that idea." *Id.* at 302. It reiterated that "invocation of academic studies said to indicate that the threatened harms are not real is insufficient to cast doubt on the experience of the local government." *Id.*

Although Dr. Linz might raise new arguments, he does not dispute all aspects of the County's reliance. Numerous federal courts have examined this challenge, and routinely they have refused to critique in hindsight the internal decision-making processes of local governments, particularly when the local governments make findings of legislative facts and review studies and cases in the field of secondary effects. Abilene Retail thus fails to trigger the burden shifting process discussed above. *See G.M. Enterprises, Inc. v. Town of St. Joseph*, 350 F.3d 631, 639 (7th Cir. 2003) (not shifting the burden to the city to establish secondary effects because Dr. Linz's reports were "not sufficient to vitiate the result reached in the Board's legislative process"). Moreover, in this case, not only did the County rely on

22 reports and 27 prior cases, but its expert also directly refuted the findings of Dr. Linz. Thus, even if Abilene Retail shifted the burden to the County, the County responded with adequate evidence to support the Ordinance. This meets the required showing to establish secondary effects under *City of Renton* and its progeny:

> To the extent [plaintiff] argues that the city has not "demonstrate[d] that the recited harms are real, not merely conjectural," we disagree. [The city] need not wait for sexually oriented businesses to locate within its boundaries, depress property values, increase crime, and spread sexually transmitted diseases before it regulates those businesses. It may rely on the experience of other cities to determine whether the harms presented by sexually oriented businesses are real and should be regulated. In other words, the city may control a perceived risk through regulation. The Court has long held, and we agree, that [the city's] stated governmental interests in circumscribing the adverse secondary effects of sexually oriented businesses "must be accorded high respect."

*City of Aurora*, 136 F.3d at 688 (internal citations omitted).

Abilene Retail also challenges the Ordinance under the substantial interest prong by asserting that the Council singled it out for regulation and had a hostile motive. Again, this argument fails. *See, e.g., City of Erie*, 529 U.S. at 279 (noting that in line with a string of earlier cases, "this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive."); *City of Renton*, 475 U.S. at 49 (same).

The County therefore fulfills the first prong of the *City of Renton* test by proving that the Ordinance advances a substantial government interest.

### B. Narrowly Tailored

The second prong of the *City of Renton* test requires that the Ordinance be narrowly tailored. Abilene Retail challenges that the Ordinance fails under this prong because the

13

Ordinance restricts the hours of operation between midnight and 6 A.M., the Ordinance includes within its scope retail-only stores, and the disclosure requirements for ownership are too demanding. Each of these challenges fails as a matter of law.

The objection against closing between midnight and 6 A.M. is invalid. If the Ordinance is included within the category of a "time, manner, and place regulations" as defined by *City of Renton*, then by definition some time restriction is allowed. Abilene Retail cannot identify any reason why the limit from midnight to 6 A.M. will have more than a *de minimis* effect on its First Amendment rights. *Accord Doctor John's, Inc. v. City of Roy*, 333 F. Supp. 2d 1168, 1184 (D. Utah 2004). Further, the Tenth Circuit already has dismissed the second objection, involving a distinction between "on-site" and "off-site" retail stores, as "constitutionally irrelevant." *Id*. at 688. The final objection regarding ownership interest disclosure for those with a 35% or higher interest is also unfounded. *Cf. American Target Advertising, Inc. v. Giani*, 199 F.3d 1241, 1248 (10th Cir. 2002) ("The Supreme Court has indicated that registration and disclosure provisions do not raise First Amendment problems.").

In *City of Aurora*, the Tenth Circuit reversed the district court because it "construed the narrow tailoring inquiry too narrowly, and held [the city] to a far more stringent standard than required by *Renton*. . . ." 136 F.3d at 689. The Tenth Circuit commanded that narrowly tailored "need not be the least restrictive or least intrusive means of doing so." *Id*. Because the Ordinance here is not "substantially broader than necessary," it is narrowly tailored. *Id*.

### C.    Alternative Avenues of Communication

In assessing the final prong under *City of Renton*, the court examines whether Abilene Retail can relocate The Lion's Den to other areas of Dickinson County. The First Amendment merely requires that the County "refrain from effectively denying [Abilene Retail] a reasonable opportunity to open and operate" within Dickinson County. *See City of Renton*, 475 U.S. at 932. The County bears the burden to make this showing. *City of Aurora*, 136 F.3d at 688. As a zoning provision, the Ordinance is valid "so long as 'reasonable alternative avenues of communication' are left open, a question that is answered through an analysis of how much land is available in which adult businesses may be located under the zoning system. In undertaking that analysis, the courts must examine what land is actually available, but also must keep in mind that adult businesses must 'fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees.'" *City of Littleton*, 311 F.3d at 1239, rev'd on other grounds, *City of Littleton*, 541 U.S. 774.

Upon review, the Ordinance survives. As it stands, the County designated ten available sites for sexually oriented businesses, and no other such businesses currently are in Dickinson County. This clearly meets the final prong of the *City of Renton* test. *See City of Littleton*, 311 F.3d at 1240-41 (observing that designating seven available sites is sufficient if only one adult business exists in a city). In the end, the County has not used "the power to zone as a pretext for suppressing expression, but rather has sought to make some areas available for [sexually oriented stores] and their patrons, while at the same time preserving the quality of life in the community at large by preventing those [stores] from locating in other areas. This, after all, is the essence of zoning." *Id*.

**4.      Whether the Ordinance is Overbroad**

A party challenging an ordinance as overbroad has the burden "to demonstrate a realistic danger that the [regulation] will significantly compromise recognized First Amendment protections of individuals not before the Court." *City Council of Los Angeles v. Vincent,* 466 U.S. 789, 802 (1984). In describing the danger posed by the overbreadth doctrine, the Tenth Circuit cautioned:

> Facial challenges are strong medicine. Article III of the Constitution ensures that federal courts are not "roving commissions assigned to pass judgment on the validity of the nation's laws," but instead address only specific "cases" and "controversies."  As the Supreme Court recently observed, "facial challenges are best when infrequent. . . . Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks." Because facial challenges push the judiciary towards the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims.

*Ward v. Utah*, 398 F.3d 1239, 1246-47 (10th Cir. 2005) (internal citations omitted).

Because of these potential harms, "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law-particularly a law that reflects legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.   At that point, there are 'substantial social costs *created* by the overbreadth doctrine. . . .'"  *Faustin v. City and County of Denver*, 423 F.3d 1192, 1199-1200 (10th Cir. 2005) (citations omitted).  Thus, "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's

16

plainly legitimate sweep." *Hill v. Colorado*, 530 U.S. 703, 731-32 (2000).                G i v e n

these daunting standards, Abilene Retail's overbreadth challenge is baselesss.    It merely offers

hypothetical speculation.    The Ordinance's scienter provision, which Abilene Retail never even

addresses, further limits any overbreadth or vagueness of the Ordinance.  *See Ward*, 398 F.3d

at 1252. Because its conjectures are neither "real" nor "substantial" as articulated by the Tenth

Circuit, its overbreadth challenge fails.


**5.        Whether the Inspection Provisions Violate the Fourth Amendment**

Abilene Retail also alleges that the inspection provisions of the Ordinance violate   the

Fourth Amendment.    That argument fails, however, because the inspections do not amount to

a "search" within the Fourth Amendment. Initially, the court notes that "'the Fourth Amendment

protects people, *not places.*'"  *United States v. Longoria*, 177 F.3d 1179,   1183 (10th Cir.

1999) (quoting *Katz v. United States,* 389 U.S. 347, 351 (1967)).   In addition, "[w]hat a person

knowingly exposes to the public, 'even in his own house or office, is not a subject of Fourth

Amendment protection.'"   *United States v. Flowers*, 336 F.3d 1222, 1228 (10th Cir. 2003)

(quoting *Katz*, 389 U.S. at 351).    Also, there is a substantially reduced expectation of privacy

in a commercial building open to the public.  *United States v. Anderson*, 154 F.3d 1225, 1229

(10th Cir. 1998).

This general rule applies particularly to open places in sexually oriented businesses.

*See Maryland v. Macon*, 472 U.S. 463, 469 (1985) ("The officer's action in entering the

bookstore and examining the wares that were intentionally exposed to all who frequent the

place of business did not infringe a legitimate expectation of privacy and hence did not constitute a search within the meaning of the Fourth Amendment."). Because Abilene Retail has no reasonable expectation of privacy in the areas of its store open to the public, no "search" ever occurs based on the inspection provisions of the Ordinance. Thus, there is no Fourth Amendment violation.

**6.     Whether the Ordinance Violates the 14th Amendment Right to Privacy**

As a final matter, Abilene Retail alleges that the Ordinance violates the Fourteenth Amendment substantive due process right to privacy. This argument lacks support. To begin, the Supreme Court already rejected a similar argument under the Fourteenth Amendment. *Cf. City of Renton*, 475 U.S. at 55 n.4 ("As should be apparent from our proceeding discussion, respondents can fare no better under the Equal Protection Clause than under the First Amendment itself.").

In addition, Abilene Retail heavily relies upon *Carey v. Population Services Int'l*, 431 U.S. 678 (1977). The facts and holding of that case are too attenuated to support its Fourteenth Amendment claim here. In *Carey*, the Supreme Court prevented states from restricting access to contraceptives. In this case, the privacy interest at stake is much less, and the regulation is merely a zoning regulation, not an outright restriction. The Ordinance forces sexual device stores to close between midnight and 6 A.M., but the Ordinance specifically exempts pharmacies and drug stores. Either may sell sexual devices at any hour of the day. Abilene Retail's cited authorities simply do not support its claim that a minor restriction from

midnight to 6 A.M. on licensed sexual device stores violates the Fourteenth Amendment. The court finds no privacy violation.

6.      **Conclusion**

For all of the above reasons, the County has refute all of Abilene Retail's challenges to the Ordinance.   The Ordinance is a valid, content-neutral zoning regulation as outlined by the Tenth Circuit in *City of Aurora*, 136 F.3d 683.

**IT IS THEREFORE ORDERED BY THE COURT** that the defendants' motion for summary judgment (doc. # 48) is granted.

**IT IS SO ORDERED** this 1st day of December, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge